# Exhibit A

Insurer:

 **EVANSTON INSURANCE COMPANY**

[A stock insurance company, herein called the Company, which except in Illinois is a non-admitted insurer, writing pursuant to the surplus lines laws and not under the jurisdiction of the Insurance Commissioner.]

PLCYJK 12/06



Policy No.  LA-806580
Prev. No.   LA-806168
Prod. No.   12615

## DECLARATIONS – LAWYERS PROFESSIONAL LIABILITY INSURANCE POLICY

**Claims Made Coverage:** The coverage afforded by this policy is limited to liability for only those Claims that are first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to the terms herein.

**Notice:** This is a duty to defend policy. Additionally, this policy contains provisions that reduce the Limits of Liability stated in the policy by the costs of legal defense and permit legal defense costs to be applied against the deductible, unless the policy is amended by endorsement. Please read the policy carefully.

1. **NAMED INSURED:** LONSTEIN LAW OFFICE, P.C.

2. **BUSINESS ADDRESS:**
   80 N. MAIN STREET
   ELLENVILLE, NY 12428

3. **POLICY PERIOD:** From June 1, 2013 to June 1, 2014
   12:01 A.M. Standard Time at address of Insured stated above

4. **LIMITS OF LIABILITY:**

   A. Each Claim:                                $ 1,000,000

   B. Policy Aggregate:                          $ 3,000,000

5. **DEDUCTIBLE:**

   Each Claim:                                   $    10,000

6. **PREMIUM FOR POLICY PERIOD:**                $    35,585.00

7. **RETROACTIVE DATE:** June 1, 2000

8. **PREMIUM FOR EXTENDED REPORTING PERIOD:** 100% for 12 months; 150% for 24 months; or 200% for 36 months

9. **ENDORSEMENTS ATTACHED AT POLICY INCEPTION:**

   1. EIC 4115-01          25% Minimum Earned Premium Endorsement

**Policy No.** LA-806580

10. **NOTICES**:

Notices required to be provided to the Company under this policy shall be addressed to:

| CLAIM NOTICES: | ALL OTHER NOTICES: |
|---|---|
| Claims Service Center<br>MARKEL SERVICE, INCORPORATED<br>Ten Parkway North<br>Deerfield, Illinois 60015 | MARKEL NORTHEAST<br>310 Highway 35 South<br>Red Bank, NJ 07701 |
| Fax: (855) 662-7535<br>E-mail: newclaims@markelcorp.com | Fax: (866) 730-1027 |

_____
Authorized Representative

Policy Form: LA-20000 01/07
Dec: LA-10000-01 01/08
Date Printed: August 3, 2020

# Markel's Designed Protection®
# Risk Management Resources for Law Firms

<u>Welcome</u> to Markel's Designed Protection® leading edge Risk Management Resources.

The following risk management resources are available exclusively to our policyholders at our website <u>www.markelcorp.com/riskmanagement</u> at *no additional cost*.

**HOW TO QUICKLY ACCESS RISK MANAGEMENT RESOURCES:**

<u>Step 1</u>.   Go onto our website, <u>www.markelcorp.com/riskmanagement</u>.

<u>Step 2</u>.   Select the Designed Protection services that apply to your policy, to get to the Login screen.

<u>Step 3</u>.   Review the disclaimer, enter your current policy number and click on the button below to access. Your policy number is LA806580.

If you need technical assistance during the log in process, call (866) 932-2433, x11426.

**Available Risk Management Resources include:**

- **Designed Protection® Risk Management Telephone Hotline for Law Firms**
  This confidential telephone hotline is staffed by nationally known preeminent Lawyers E&O defense lawyers who are experts in Lawyers E&O Risk Management and lawyer's ethical issues that are available to answer general risk management questions.

- **Designed Protection® Risk Management Guide for Law Firms**
  This Guide provides insight into core causes of Lawyers E&O claims. 80 risk management strategies to help reduce the risk of professional liability exposures. Key topic areas include achieving optimal law firm culture, enhancing overall quality of client relations, raising client satisfaction levels, implementing financial management and practice management strategies, and interrupting existing claim trends or patterns.

- **Designed Protection® Risk Management Professional Practices Guide**
  One of a kind guide provides 230 Leading Edge Strategies addressing 75 different topics. Helps professionals pursue best practices in the delivery of their services.

- **Top 10 Tips for Avoiding Lawyers Professional Liability Claims**
  A concise, bullet point summary of 10 liability risk avoidance strategies.

Please check our website regularly as additional resources are added throughout the year.

01/11


# EVANSTON INSURANCE COMPANY

---

## Endorsement

Named Insured:  
LONSTEIN LAW OFFICE, P.C.

Attached to and forming  
a part of Policy No.: LA-806580  
Endorsement No.: 1  
Effective Date of Endorsement: June 1, 2013

---

### 25% MINIMUM EARNED PREMIUM ENDORSEMENT

In consideration of the premium paid, it is hereby understood and agreed that in the event that this policy is cancelled by the Named Insured, the policy premium is subject to a minimum earned premium of twenty-five percent (25%) of the total premium.

All other provisions of the policy shall remain unchanged.

EIC 4115-01 2/03                                                                                                                              Page 1 of 1

## Lawyers Professional Liability Insurance Policy

THIS IS A CLAIMS MADE POLICY. PLEASE READ IT CAREFULLY.

In consideration of the premium paid, the undertaking of the Named Insured to pay the Deductible as described herein and in the amount stated in the Declarations, in reliance upon the statements in the application attached hereto and made a part hereof and the underwriting information submitted on behalf of the Insured, and subject to the terms, conditions and limitations of this policy, the Company and the Insured agree as follows:

### THE INSURED

The unqualified word "Insured", either in the singular or plural, means:

A.  the Named Insured specified in Item 1. of the Declarations or any Predecessor Firm;

B.  any lawyer who is a past, present or future partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured solely for Professional Legal Services;

C.  any non-lawyer who is a past, current or future employee of the Named Insured specified in Item 1. of the Declarations or any Predecessor Firm solely while acting on behalf of the Named Insured specified in Item 1. of the Declarations or any Predecessor Firm;

D.  any person, professional corporation or limited liability professional corporation designated as Of Counsel solely for Professional Legal Services;

E.  any lawyer who is a temporary or leased professional personnel solely for Professional Legal Services:

F.  the heirs, executors, administrators, assigns and legal representatives of each Insured hereinabove in the event of death, incapacity or bankruptcy of such Insured, but only while acting within the scope of their duties as such on behalf of the Named Insured or of the Insured's estate.

### INSURING AGREEMENT

The Company shall pay on behalf of the Insured all sums in excess of the Deductible amount stated in Item 5. of the Declarations, which the Insured shall become legally obligated to pay as Damages as a result of Claims first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, by reason of:

A.  a Wrongful Act arising out of Professional Legal Services; or

B.  Personal Injury committed by the Insured;

provided:

1.  the entirety of the Wrongful Act or Personal Injury happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2.  prior to the effective date of this policy no Insured had any knowledge of such Wrongful Act or Personal Injury or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Claim was likely.

### SUPPLEMENTARY PAYMENTS

A.  **Disciplinary Proceedings:** Solely with respect to Section The Insureds A., B., D., or F. (solely as F. applies to Section The Insured A., B. or D.), upon submission to the Company of satisfactory written proof of payment, the Company shall reimburse the Insured all reasonable and necessary legal fees and legal expenses incurred and paid by the Insured in defending a Disciplinary Proceeding first received by the Insured during the Policy Period and reported to the Company pursuant to Section Claims A., Claim Reporting Provision; provided:

LA-20000 01/07                                Page 1

1. the act giving rise to the Disciplinary Proceedings happens during the Policy Period or on or after the Retroactive Date stated in Item 7. of the Declarations; and

2. prior to the effective date of this policy, the Insured had no knowledge of such Disciplinary Proceeding or any fact, circumstance, situation or incident which would lead a reasonable person in that Insured's position to conclude that a Disciplinary Proceeding was likely.

The total of such reimbursement shall not exceed twenty-five thousand dollars ($25,000) for all Disciplinary Proceedings first received during the Policy Period.

No reimbursement pursuant to this Section A. shall be made for the Insured's payment of any taxes; criminal or civil fines, penalties or sanctions; registration or licensing fees; or any monetary judgment, award or settlement of any kind.

Reimbursement to the Insured pursuant to this Section A. shall be in addition to the Limits of Liability stated in Item 4. of the Declarations and shall not be subject to the Deductible.

B. **Loss of Earnings and Expense Reimbursement:** Upon submission to the Company of satisfactory written proof of payment, the Company shall reimburse the Insured as expense reimbursement all reasonable and necessary expenses incurred by the Insured at the Company's request for attendance at any arbitration, Mediation, deposition, hearing or trial in connection with a Claim to which this policy applies.

The Company shall compensate the Named Insured for loss of earnings solely of an Insured who is a lawyer a maximum of four hundred dollars ($400) per day per Insured lawyer to attend at the Company's request any arbitration, Mediation, deposition, hearing or trial in connection with a Claim to which this policy applies.

The maximum the Company shall reimburse all Insureds for all loss of earnings and expense reimbursements during the Policy Period for all Claims to which this policy applies and all attendances is ten thousand dollars ($10,000).

Payments to the Insured pursuant to this Section B. shall be in addition to the Limits of Liability stated in Item 4. of the Declarations and shall not be subject to the Deductible.

## DEFINITIONS

A. **Claim** means a demand received by the Insured for Damages and shall include the service of suit or institution of arbitration proceedings against the Insured.

B. **Claim Expenses** means reasonable and necessary amounts incurred by the Company or by the Insured with the prior written consent of the Company in the defense of that portion of any Claim for which coverage is afforded under this policy, including costs of investigation, court costs, costs of bonds to release attachments and similar bonds, but without any obligation of the Company to apply for or furnish any such bonds, and costs of appeals; provided, however, Claim Expenses shall not include: (1) salary, wages, overhead, or benefit expenses of or associated with employees or officials of the Named Insured or employees or officials of the Company; or (2) salary, wages, administration, overhead, benefit expenses, or charges of any kind attributable to any in-house counsel or captive out-of-house counsel for the Named Insured or the Company.

C. **Damages** means the monetary portion of any judgment, award or settlement; provided, however, Damages shall not include: (1) punitive or exemplary damages or any multiplied portions of damages in excess of actual damages, including trebling of damages; (2) taxes, criminal or civil fines, or attorneys' fees of a party other than an Insured or other penalties imposed by law; (3) sanctions; (4) matters which are uninsurable under the law pursuant to which this policy shall be construed; or (5) the return, withdrawal, reduction, restitution or payment of any fees, profits or charges for services or consideration and/or any expenses paid to the Insured for services or goods.

D. **Disciplinary Proceeding** means any complaint, charge or investigation commenced or action brought by a bar association, disciplinary board or other similar entity alleging violations of the rules of

LA-20000 01/07 Page 2

professional responsibility, or any other action to limit, suspend or revoke the Insured's license to practice law.

E. **Mediation** means the voluntary process in which an objective third party who is a qualified professional mediator selected by the parties to the Claim, with written agreement of the Company, intervenes between the parties in an attempt to achieve settlement of the Claim. Mediation does not include litigation, arbitration or any court mandated proceedings.

F. **Of Counsel** means any lawyer, professional corporation, limited liability professional corporation or any lawyer who is an employee of such professional corporation or limited liability professional corporation who is specifically identified on the application for this policy as Of Counsel solely while acting on behalf of the Named Insured.

G. **Personal Injury** means:

   1. libel, slander or defamation;

   2. oral or written publication of material that violates a person's right of privacy; or

   3. false arrest, detention or imprisonment, or malicious prosecution;

   committed in the performance of Professional Legal Services.

H. **Predecessor Firm** means any legal entity which was engaged in the practice of law to whose financial assets and liabilities the Named Insured is the majority successor in interest and which is designated in the application as a Predecessor Firm.

I. **Policy Period** means the period from the inception date of this policy to the policy expiration date as stated in Item 3. of the Declarations, or its earlier cancellation or termination date.

J. **Professional Legal Services** means services rendered by an Insured (1) as a lawyer, as a notary public, as a mediator, as an arbitrator, as a title insurance agent, or as an administrator, conservator, executor, guardian, trustee other than a trustee in bankruptcy, or any other similar fiduciary, provided that such services are connected with and incidental to the Insured's profession as a lawyer and are performed by or on behalf of the Named Insured or any Predecessor Firm; or (2) as a director or officer of any bar association, its governing body or any of its committees, provided that such services were rendered while such Insured was a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured.

K. **Wrongful Act** means any act, error or omission by the Insured in rendering or failing to render Professional Legal Services for others.

## THE EXCLUSIONS

This policy does not apply to:

A. any Claim based upon or arising out of a contract or agreement for, or any other right relating to, payment of or division of any fees or fee apportionment between the Insured and any lawyer;

B. any Claim made against the Insured by or on behalf of any Insured under this policy; provided, however, this exclusion does not apply to a Claim arising out of the rendering of Professional Legal Services by an Insured rendered to such other Insured as a client;

C. any Claim brought by or on behalf of any entity which at the time Professional Legal Services were rendered, any Insured had more than a ten percent (10%) ownership interest or control, whether or not such ownership or control is financial or otherwise;

D. any Claim based upon or arising out of any obligation of the Insured under any workers' compensation, unemployment compensation or disability benefits law or under any similar law;

E. any Claim based upon or arising out of wrongful termination or other employment related practices;

F. any Claim based upon, arising out of, or in any way involving any deliberately criminal, dishonest or fraudulent act, error or omission if a judgment or other final adjudication adverse to the Insured establishes that the Insured committed a criminal, dishonest or fraudulent act, error or omission;

provided, however, any criminal, dishonest or fraudulent act, error or omission pertaining to any Insured under this policy shall not be imputed to any other Insured under this policy for the purpose of determining the applicability of this exclusion.

G. any Claim for any actual or alleged bodily injury, sickness, disease or death of any person, or damage to or destruction of any tangible property including loss of use thereof;

H. any Claim based on or arising out of any Insured's services or capacity as a securities broker, dealer, financial planner, investment advisor, accountant, real estate broker or real estate agent;

I. any Claim based upon or arising out of any unlawful discrimination by any Insured;

J. any Claim based upon or arising out of notarized certification or acknowledgement by any Insured, in his/her capacity as a notary public, of a signature without the physical appearance at the time of said notarization before such notary public, or the person who is or claims to be the person signing such instrument;

K. any Claim based upon or arising out of the Insured's capacity as a public official, or as an employee of a governmental body, subdivision or agency; provided, however, this exclusion does not apply to the rendering of Professional Legal Services by an Insured to a governmental body, subdivision or agency wherein the Named Insured receives a fee for such Professional Legal Services; or

L. any Claim based upon or arising out of any actual or alleged violations of the Employee Retirement Income Security Act of 1974 (ERISA) and its amendments or any regulation or order issued pursuant thereto or any similar federal, state or local law.

## TERRITORY

The insurance afforded by this policy applies worldwide, provided the Claim is made in the United States of America, its territories or possessions, Puerto Rico or Canada.

## LIMITS OF LIABILITY

A. **Limit of Liability - Each Claim:** The total liability of the Company for the combined total of Damages and Claim Expenses for each Claim first made against the Insured during the Policy Period or Extended Reporting Period, if exercised, shall not exceed the Limit of Liability stated in Item 4.A. of the Declarations as applicable to Each Claim. This limit applies as excess over the Deductible amount.

B. **Limit of Liability - Policy Aggregate:** Subject to the above Limits of Liability A., the total liability of the Company shall not exceed the Aggregate Limit of Liability as stated in Item 4.B. of the Declarations for all Damages and Claim Expenses arising out of all Claims first made during the Policy Period and the Extended Reporting Period, if exercised. This limit applies as excess over the Deductible amount.

C. **Deductible:** The Deductible amount stated in Item 5. of the Declarations shall be paid by the Named Insured and shall be applicable to each Claim and shall include Damages and Claim Expenses, whether or not any Damages payments are made.

Such amounts shall, upon written demand by the Company, be paid by the Named Insured within ten (10) days. The total payments requested from the Named Insured in respect of each Claim shall not exceed the Deductible amount stated in Item 5. of the Declarations.

The determination of the Company as to the reasonableness of the Claim Expenses shall be conclusive on the Named Insured.

D. **Deductible Credits:** If a Claim is settled without litigation, arbitration, Mediation or court mandated proceedings, the Deductible for such Claim will be reduced by seventy-five percent (75%) or ten thousand dollars ($10,000), whichever is less.

If the Named Insured and the Company agree to the use of Mediation and a Claim is settled at that Mediation, the Deductible for such Claim will be reduced by fifty percent (50%) or ten thousand dollars ($10,000), whichever is less.

LA-20000 01/07                              Page 4

E.  **Multiple Insureds, Claims and Claimants:** The inclusion herein of more than one Insured in any Claim or the making of Claims by more than one person or organization shall not operate to increase the Limits of Liability stated in Item 4. of the Declarations. More than one Claim arising out of a single Wrongful Act or Personal Injury or a series of related Wrongful Acts or Personal Injuries shall be considered a single Claim. All such Claims, whenever made, shall be treated as a single Claim. Such single Claim, whenever made, shall be deemed to be first made on the date on which the earliest Claim arising out of such Wrongful Act is made or with regard to notice given to and accepted by the Company pursuant to Section Claims B., Discovery Clause, on the date within the Policy Period on which such notice of potential Claim is first received by the Company.

## DEFENSE, SETTLEMENTS AND CLAIM EXPENSES

A.  **Defense, Investigation and Settlement of Claims:**

   1.  The Company shall have the right and duty to defend and investigate any Claim to which coverage under this policy applies pursuant to the following provisions:

      (a) Claim Expenses incurred in defending and investigating such Claim shall be a part of and shall not be in addition to the Limits of Liability stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible. The Company shall have no obligation to pay any Damages or to defend or continue to defend any Claim or to pay Claim Expenses after the Limits of Liability as stated in Item 4. of the Declarations have been tendered to the Insured or into the court or exhausted by payment(s) of Damages and/or Claim Expenses.

      (b) The Company shall select defense counsel; provided, however, that if the law of the state of the Insured's domicile (as stated in Item 2. of the Declarations) allows the Insured to control the selection of defense counsel where a conflict of interest has arisen between the Insured and the Company, the Company will provide a list of attorneys or law firms from which the Insured may designate defense counsel who shall act solely in the interest of the Insured, and the Insured shall direct such defense counsel to cooperate with the Company. Such cooperation shall include:

      (i)   providing on a regular basis, but not less frequently than every three (3) months, written reports on claimed Damages, potential liability, progress of any litigation, any settlement demands, or any investigation developments that materially affect the Claim;

      (ii)  providing any other reasonable information requested and fully itemized billing on a periodic basis;

      (iii) cooperating with the Company and the Insured in resolving any discrepancies;

      and the fees and costs incurred by such defense counsel, including those fees and costs generated by cooperation with the Company, as set forth above, shall be included in Claim Expenses. Such Claim Expenses shall be a part of and shall not be in addition to the Limits of Liability as stated in Item 4. of the Declarations. Such Claim Expenses shall reduce the Limits of Liability and shall be applied against the Deductible.

B.  **Consent to Settlements:**

   1.  The Company shall not settle any Claim without the prior written consent of the Insured, but the Company shall have, at all times, the right to recommend a settlement of any Claim. If the Insured shall refuse to settle such Claim pursuant to the Company's recommendations, then the Company's liability in regard to such Claim shall not exceed the amount for which the Claim could have been settled and the amount of any Claim Expenses incurred up to the date of the Insured's refusal to settle the Claim. Such amounts are subject to the provisions of the Section Limits of Liability A. and B.

   2.  The Insured shall not, with respect to any Claim covered under this policy, except at his/her own cost, make any payment, admit any liability, settle any Claims, assume any obligation, agree to arbitration or any similar means of resolution of any dispute, waive any rights or incur Claim Expenses without the Company's prior written consent, such consent not to be unreasonably withheld. Any costs and expenses incurred by the Insured prior to the Insured giving written notice of the Claim to the Company shall be borne by the Insured and will not constitute satisfaction of the Deductible.

**CLAIMS**

A.  **Claim Reporting Provision:**  The Insured shall give to the Company written notice as stated in Item 10. of the Declarations as soon as practicable of any Claim first made against the Insured during the Policy Period or the Extended Reporting Period, if exercised.

   In the event suit is brought against the Insured, the Insured shall immediately forward to Markel Service, Incorporated, Ten Parkway North, Deerfield, Illinois, 60015, on behalf of the Company, every demand, notice, summons or other process received by him/her or by his/her representatives.

B.  **Discovery Clause:**  If during the Policy Period, the Insured first becomes aware of a specific Wrongful Act or Personal Injury which is reasonably expected to result in a Claim within the scope of coverage of this policy, then the Insured may provide written notice to the Company containing the information listed below. If such written notice is received by the Company during the Policy Period, then any Claim subsequently made against the Insured arising out of such Wrongful Act or Personal Injury shall be deemed for the purpose of this insurance to have been first made on the date on which such written notice is first received by the Company.

   It is a condition precedent to the coverage afforded by this Discovery Clause that written notice be given to the Company containing the following information:

   1. the description of the specific Wrongful Act or Personal Injury;
   2. the date on which such Wrongful Act or Personal Injury took place;
   3. the injury or damage which has or may result from such Wrongful Act or Personal Injury;
   4. the identity of any persons and/or organization subject to such injury and/or damage; and
   5. the circumstances by which the Insured first became aware of such Wrongful Act or Personal Injury.

C.  **Assistance and Cooperation of the Insured:**  The Insured shall cooperate with the Company and upon the Company's request, the Insured shall: (1) submit to examination and interview by a representative of the Company, under oath if required; (2) attend hearings, depositions and trials; (3) assist in effecting settlement, securing and giving evidence, obtaining the attendance of witnesses in the conduct of suits; (4) give a written statement or statements to the Company's representatives and meet with such representatives for the purpose of determining coverage and investigating and/or defending any Claim, all without cost to the Company other than expense reimbursement provided under Section Supplementary Payments. The Insured shall further cooperate with the Company and do whatever is necessary to secure and effect any right of indemnity, contribution or apportionment which the Insured may have.

D.  **False or Fraudulent Claims:**  If any Insured shall commit fraud in proffering any Claim, this insurance shall become void from the date such fraudulent Claim is proffered.

**EXTENDED REPORTING PERIOD**

A.  If the Named Insured nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., or if the Company nonrenews this policy or cancels this policy pursuant to Section Other Conditions A., for reasons other than nonpayment of premium or Deductible or non-compliance with the terms and conditions of this policy, then the Named Insured shall have the right upon payment of an additional premium calculated at that percentage stated in Item 8. of the Declarations of the annual premium for the Policy Period, to extend the coverage granted under this policy, to Claims first made against the Insureds during: (1) twelve (12) months; (2) twenty-four (24) months; or (3) thirty-six (36) months; as elected by the Named Insured, and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such cancellation or nonrenewal, for any Wrongful Act or Personal Injury committed on or after the Retroactive Date and prior to the effective date of such cancellation or nonrenewal. This period of

months as elected by the Named Insured and described in this paragraph shall be referred to in this policy as the Extended Reporting Period.

If, however, this policy is immediately succeeded by similar claims made insurance coverage on which the Retroactive Date is the same as or earlier than that stated in the Item 7. of the Declarations, the succeeding insurance shall be deemed to be a renewal hereof and, in consequence, the Named Insured shall have no right to purchase an Extended Reporting Period.

The quotation of a different premium and/or Deductible and/or Limit of Liability for renewal does not constitute a cancellation or refusal to renew for the purpose of this provision.

B. As a condition precedent to the right to purchase the Extended Reporting Period, the Named Insured must have paid: (1) all Deductibles when due; (2) all premiums due for the Policy Period; and (3) all premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement. The right to purchase the Extended Reporting Period shall terminate unless a written request for the Extended Reporting Period is received by the Company within thirty (30) days after the effective date of cancellation or nonrenewal together with full payment for the Extended Reporting Period. If such written request and premium payment for the Extended Reporting Period are not so received by the Company, there shall be no right to purchase the Extended Reporting Period at a later date.

C. In the event of the purchase of the Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D. The Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## NON-PRACTICING EXTENDED REPORTING PERIOD OPTIONS

A. Any natural person who is a partner, officer, director, principal, shareholder, shareholder of a partner, member or employee of the Named Insured who, during the Policy Period, retires or otherwise ceases the private practice of his/her profession as a lawyer shall have the right upon payment of an additional premium of: (1) one hundred percent (100%) of the annual premium for the Policy Period divided by the total number of lawyers shown in the application for this policy, for twelve (12) months; or (2) one hundred and fifty percent for (150%) of the annual premium for the Policy Period divided by the total number of lawyers shown in the application for this policy, for twenty-four (24) months; to extend coverage granted under this policy, to Claims first made against the such Insured during (1) twelve (12) months; or (2) twenty-four (24) months; as elected by the Insured and reported to the Company pursuant to Section Claims A., Claim Reporting Provision, following immediately upon the effective date of such retirement or cessation of private practice, for any Wrongful Act or Personal Injury committed on or after the Retroactive Date and prior to the effective date of such retirement or cessation of private practice. This period of months as elected by the Insured and described in this paragraph shall be referred to in this policy as the Non-Practicing Extended Reporting Period.

This Non-Practicing Extended Reporting Period Option shall not be available when the license to practice law of the Insured exercising the Non-Practicing Reporting Period Option, has been revoked, suspended or surrendered at the request of any disciplinary or regulatory authority for reason other than the retirement or cessation of private practice of such Insured at, on or prior to the effective date of retirement or cessation of private practice.

B. As a condition precedent to the right to elect the Non-Practicing Extended Reporting Period, the Named Insured must have paid: (1) all Deductibles when due; (2) all premiums due for the Policy Period; and (3) all premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies of which this policy is a renewal or replacement of. The right to elect the Non-Practicing Extended Reporting Period shall terminate unless a written request for the Non-Practicing Extended Reporting Period is received by the Company within sixty (60) days after the effective date of retirement or cessation of private practice

together with full payment for the Non-Practicing Extended Reporting Period. If such written request and premium payment for the Non-Practicing Extended Reporting Period are not so received by the Company, there shall be no right to elect the Non-Practicing Extended Reporting Period at a later date.

C. In the event of the purchase of the Non-Practicing Extended Reporting Period the entire premium therefor shall be fully earned at its commencement.

D. The Non-Practicing Extended Reporting Period shall not in any way increase the Limits of Liability stated in Item 4. of the Declarations.

## OTHER CONDITIONS

A. **Cancellation:** This policy may be cancelled by the Named Insured on behalf of all Insureds by mailing to the Company written notice stating when thereafter such cancellation shall be effective. If cancelled by the Named Insured, the earned premium shall be computed at the customary short rate. Payment or tender of unearned premium shall not be a condition precedent to the effectiveness of cancellation, but such payment shall be made as soon as practicable.

This policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing to the Named Insured, at the address stated in Item 2. of the Declarations, written notice stating when, not less than thirty (30) days thereafter, such cancellation shall be effective. However, if the Company cancels the policy because the Named Insured has failed to pay a premium or Deductible when due, including premium and deductibles due on any other policy(ies) issued by the Company or any of its affiliated companies in an uninterrupted series of policies for which this policy is a renewal or replacement, this policy may be cancelled by the Company or by its underwriting manager, on behalf of the Company, by mailing a written notice of cancellation to the Named Insured stating when, not less than ten (10) days thereafter, such cancellation shall be effective. The mailing of notice as aforementioned shall be sufficient notice and the effective date of cancellation stated in the notice shall become the end of the Policy Period. Such notice shall be conclusive on all Insureds. Delivery of such written notice by the Named Insured, the Company or its underwriting manager shall be equivalent to mailing. If cancelled by the Company or its underwriting manager, earned premium shall be computed pro rata. Premium adjustment may be made at the time cancellation is effected or as soon as practicable thereafter.

B. **Changes in the Named Insured:** If after the inception date of this policy:

1. there is a change of fifty percent (50%) or more in the total number of lawyers at the Named Insured; or

2. there is any new involvement in any single practice specialty anticipated to produce twenty-five percent (25%) or more of the Named Insured's gross billable dollars;

the Named Insured shall give written notice of such change to the Company as soon as practicable, but in no event later than sixty (60) days after such change, and the Company shall have the right to additional premium for such changes, based on its sole assessment of the additional exposure(s)presented .

There shall not be any premium adjustment during the Policy Period as the result of a change in the total number of lawyers at the Named Insured other than as stated herein above.

C. **Changes in Ownership:** If after the inception date of this policy:

1. another entity or person or group of entities and/or persons acting in concert acquires a majority of the voting securities of the Named Insured or majority successor in interest of the Named Insured;

2. the Named Insured is merged into or consolidated with another entity such that the Named Insured is not the surviving entity; or

3. a receiver, liquidator, conservator, trustee or similar official is appointed with respect to the Named Insured;

then, the policy will remain in effect until the end of the Policy Period, but only with respect to any Wrongful Act or Personal Injury which occurred before such change in ownership. The Named Insured shall give written notice of such change in ownership to the Company as soon as practicable, but in no event later than sixty (60) days after such change in ownership. Further, the entire premium for this policy will be considered fully earned upon the occurrence of any of the above events in consideration of the coverage extended.

D. **Representations:**  By acceptance of this policy, the Insureds agree as follows:

1. that the information and statements contained in the application(s) are the basis of this policy and are to be considered as incorporated into and constituting a part of this policy; and

2. that the information and statements contained in the application(s) are their representations, that they shall be deemed material to the acceptance of the risk or hazard assumed by the Company under this policy, and that this policy is issued in reliance upon the truth and accuracy of such representations.

E. **Entire Agreement:**  This policy, the Declarations, the application(s) and any written endorsements attached hereto shall be deemed to be a single unitary contract.

F. **Other Insurance:**  This insurance shall be in excess of the Deductible stated in Item 5. of the Declarations and any other insurance available to the Insured whether such other insurance is stated to be primary, contributory, excess, contingent or otherwise, unless such other insurance is written only as a specific excess insurance over the Limits of Liability provided in this policy.

G. **Changes:**  Notice to any agent or knowledge possessed by any agent or other person acting on behalf of the Company shall not effect a waiver or a change in any part of this policy and shall not estop the Company from asserting any right under the terms of the policy. The terms of this policy shall not be waived or changed, except by written endorsement issued to form a part of this policy, and this policy embodies all agreements existing between the Insureds and the Company or any of its agents relating to this insurance.

H. **Assignment of Interest:**  Assignment of interest under this policy shall not bind the Company unless its consent is endorsed hereon.

I. **Subrogation:**  In the event of any payment under this policy, the Company shall be subrogated to the right of recovery of all Insureds to the extent of such payment. The Insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The Insured shall do nothing after the Claim to prejudice such rights.

Any amount so recovered shall be apportioned as follows:

Any recovery shall first be used for the repayment of expenses incurred toward subrogation; second, to any loss and expense payment by the Insured in excess of any Deductible(s); third, to any loss and expense payments by any excess carrier on behalf of the Insured; fourth, to any loss and expense payments by any primary carrier on behalf of the Insured; and, last, to repayment of the Insured's Deductible.

J. **Audit:**  The Company shall have the right to require of the Named Insured an audit by a duly authorized representative of the Company, who shall have the right and opportunity to examine the books and records of the Named Insured, and such examination may be made at any time during the said Policy Period and within three (3) years thereafter.

K. **Action Against the Company:**  No action shall lie against the Company unless, as a condition precedent thereto, the Insured shall have fully complied with all of the terms and conditions of this policy, nor until the amount of the Insured's obligation to pay shall have been fully and finally determined either by judgment against the Insured after actual trial or by written agreement of the Insured, the claimant and the Company.

Nothing contained in this policy shall give any person or organization any right to join the Company as a co-defendant in any action against the Insured to determine the Insured's liability. Bankruptcy or insolvency of the Insured or of the Insured's estate shall not relieve the Company of any of its obligations hereunder.

L. **Authorization:** By acceptance of this policy, the first person or organization named in Item 1. of the Declarations shall act on behalf of all Insureds with respect to the giving and receiving of all notices to and from the Company as provided herein: the exercising of the Extended Reporting Period; the cancellation of this policy in whole or part; the payment of premiums and Deductibles when due; the receiving of any return premiums that may become due under this policy; and the Insureds agree that such person or organization shall act on their behalf.

M. **Service of Suit:** Except with respect to any policy issued in any state in which the Company is licensed as an admitted insurer to transact business, it is agreed that in the event of the failure of the Company to pay any amount claimed to be due hereunder, the Company, at the request of the Named Insured, will submit to the jurisdiction of a court of competent jurisdiction within the United States and will comply with all requirements necessary to give such court jurisdiction and all matters arising hereunder shall be determined in accordance with the law and practice of such court. Nothing in this clause constitutes or should be understood to constitute a waiver of the Company's rights to commence an action in any court of competent jurisdiction in the United States, to remove an action to a United States District Court, or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States. It is further agreed that service of process in such suit may be made upon Secretary, Legal Department, Markel Midwest, Ten Parkway North, Deerfield, Illinois 60015 and that in any suit instituted against the Company upon this policy, the Company will abide by the final decision of such court or of any appellate court in the event of an appeal.

Further, pursuant to any statute of any state, territory, or district of the United States which makes provision therefor, the Company hereby designates the Superintendent, Commissioner, or Director of Insurance or other official specified for that purpose in the statute, or his/her successor or successors in office, as its true and lawful attorney upon whom may be served any lawful process in any action, suit or proceeding instituted by or on behalf of the Named Insured or any beneficiary hereunder arising out of this policy, and hereby designates the above-named as the person to whom the said officer is authorized to mail such process or a true copy thereof.

**IN WITNESS WHEREOF**, the Company has caused this policy to be signed by its President and Secretary, but this policy shall not be valid unless countersigned on the Declarations by a duly authorized representative of the Company.

*[signature]*
Secretary

*[signature]*
President

## NUCLEAR ENERGY LIABILITY
## EXCLUSION (BROAD FORM)

This exclusion modifies the provisions of this policy.

It is agreed that:

1. **This policy does not apply:**

    A. Under any Liability Coverage, to bodily injury or property damage

    (1) with respect to which an Insured under this policy is also an Insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an Insured under any such policy but for its termination upon exhaustion of its limit of liability; or

    (2) resulting from the hazardous properties of nuclear material and with respect to which (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (b) the Insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

    B. Under any Medical Payments Coverage, or any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

    C. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if

    (1) the nuclear material (a) is at any nuclear facility owned by, or operated by or on behalf of, an Insured or (b) has been discharged or dispersed therefrom;

    (2) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an Insured; or

    (3) the bodily injury or property damage arises out of the furnishing by an Insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

2. **As used in this exclusion:**

    "hazardous properties" include radioactive, toxic or explosive properties;

    "nuclear material" means source material, special nuclear material or by-product material;

    "source material", "special nuclear material", and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

    "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

    "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility within the definition of nuclear facility under paragraph (a) or (b) thereof;

    "nuclear facility" means

    (a) any nuclear reactor,

    (b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

    (c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the Insured at the premises where such equipment or device is located consists of or contains more than 25

    grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235.

  (d) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste.

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.