UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X
**LONSTEIN LAW OFFICE, P.C., JULIE** : Civil Action No: 1:20-cv-09712-LJL
**LONSTEIN, and WAYNE D. LONSTEIN,** :
 :
 : **THIRD**
 **Plaintiffs,** : **AMENDED**
 : **COMPLAINT**
 :
 -against- :
 :
**EVANSTON INSURANCE COMPANY,** :
**MARKEL SERVICE, INCORPORATED** :
**and, AT&T SERVICES, INC** :
 **Defendants.** :
---------------------------------------------------------------X

Plaintiffs, Lonstein Law Office, P.C., Julie Lonstein and Wayne D. Lonstein by their attorneys Nesenoff & Miltenberg, LLP, respectfully allege as follows, based upon their own knowledge as to their own acts and on information and belief as to all other matters:

**THE PARTIES**

1. Plaintiffs, Lonstein Law Office, P.C., Julie C. Lonstein and Wayne D. Lonstein ("Plaintiffs") brings this action for inter alia, a declaratory judgment pursuant to CPLR §3001 in order to resolve an actual justiciable controversy with Defendant Evanston Insurance Company ("Evanston") and Markel Service, Incorporated ("Markel") over whether Defendants Evanston and/or Markel have any obligation to continue providing coverage to Plaintiffs in the defense of four (4) lawsuits filed against Plaintiff pursuant to a Lawyers Professional Liability Insurance Policy issued by Defendant Evanston in favor of Plaintiffs and against and AT&T Services, Inc. (AT&T) for indemnification, breach of contract and related claims for AT&T's failure to indemnify Defendant's pursuant to a certain Retainer Agreement and Wind Down Agreement entered into between the parties.

2. The Lonstein Law Office, P.C. is a corporation duly organized and existing under the laws of the State of New York with an address of 190 South Main Street, Ellenville, New York 12428.

3. Julie C. Lonstein is an individual and a resident of the State of New York with a business address of 190 South Main Street, Ellenville, New York 12428.

4. Wayne D. Lonstein is an individual and a resident of the State of New York with a business address of 190 South Main Street, Ellenville, NY 12428.

5. Upon information and belief Defendant Evanston is a corporation and/or insurance company duly organized and existing under laws of a state other than New York, with a principal place of business in Deerfield, Illinois.

6. Upon information and belief, Evanston is licensed and authorized to sell insurance in the State of New York and does sell insurance in the State of New York.

7. Upon information and belief Defendant AT&T Services, Inc. is a corporation duly organized and existing under the laws of the State of Delaware with a principal place of business in Dallas, Texas.

8. Upon information and belief Defendant AT&T Services, Inc. is authorized to do business in the State of New York.

9. Upon information and belief AT&T Services, Inc. is the successor-in-interest to DirecTV, Inc. (AT&T Services, Inc. as successor-in-interest to DirecTV, Inc. is hereinafter referred to as "DIRECTV").

**VENUE AND JURISDICTION**

10. Venue is appropriate pursuant to 28 U.S.C. §1391.

11. This Court has jurisdiction over Defendants pursuant to 28 USC §1332.

## FACTUAL BACKGROUND

12.     At all times relevant hereto, Defendant DIRECTV was and is engaged in the business of acquiring, promoting, selling and distributing digital entertainment (i.e. broadcast and premium television programming), primarily through satellite transmission to residential and commercial subscribers throughout the United States and issue bills to commercial and residential subscribers.

13.     Upon information and belief, DIRECTV's practice of maintaining strict controls is to ensure that commercial establishments are correctly designated as such and residential accounts are similarly correctly designated.

14.     Maintaining the aforementioned strict controls is crucial as DIRECTV does not have the right to provide residential programming to commercial establishments under numerous agreements it has with various broadcasters and programmers whose content it distributes.

15.     At all relevant times hereto, Plaintiff Lonstein Law Office, P.C. ("LLO") was a law firm retained by DIRECTV since 2006 to identify, investigate and bring claims and/or civil actions against businesses or individuals throughout the United States who have illegally acquired DIRECTV commercial services without authorization or payment therefore or by misrepresenting they are an individual when the services are actually being received and exhibited in a commercial venue or establishment.

16.     On or about October 2, 2009, Plaintiffs entered into a Retainer Agreement with DirectTV to represent the interests of DirectTV in the investigation and litigation of claims against individuals and entities for the commercial misuse and unauthorized exhibition of DIRECTV satellite programming services (the "Retainer Agreement").  A copy of the Retainer Agreement as redacted by DIRECTV is annexed hereto as Exhibit "A".

17. Pursuant to the terms of the Retainer Agreement, DIRECTV agreed to "indemnify, defend and hold ATTORNEYS, its officers, directors, and employees, agents and affiliates harmless from any and all costs, expenses, liability, claims, judgments, lawsuits and demands related to the litigation of commercial misuse and fraud claims *if* CLIENT's representations regarding programming rights form the bases of the claims of misuse and fraud are determined to be invalid". Retainer Agreement, Exhibit "A" at page 3 (italics added).

18. Thereafter, on or about February 15, 2019, Plaintiffs entered into a Wind Down Agreement with AT&T Services, Inc as successor to DIRECTV (the "Wind Down Agreement"). A copy of the Wind Down Agreement as redacted by DIRECTV is annexed hereto as Exhibit "B".

19. Pursuant to the Wind Down Agreement, at paragraph 5.01 "any and all claims for indemnification arising from any prior agreement or obligation between the Parties are excluded from Article 5". *See* Exhibit "B".

20. It was the understanding of Kent P. Mader, the signatory on behalf of DIRECTV on the 2006 retainer, a longtime employee of DIRECTV and most relevantly former Senior Director for Anti-Piracy Operations for DIRECTV, that based upon the Retainer Agreement and Wind Down Agreement that "LLO should be made whole for the expenses they incurred in defense of the Perez case and the debt they incurred in their representation of DIRECTV and related damage to their business. They experienced these cost outlays based upon our mutual efforts to combat piracy and were left without a cost recovery process due to AT&T's purchase and change in strategy to wind down these ongoing anti-piracy efforts in the commercial marketplace". See, Declaration of Kent P. Mader dated January 11, 2022, annexed hereto as Exhibit "C".

21. Plaintiffs and DIRECTV fully expected that Plaintiffs would be indemnified by DIRECTV.

4

22. Evanston issued insurance policy no. LA806580 in favor of Plaintiff for insurance coverage during the period from June 1, 2013, to June 1, 2014 (the "Policy"). A copy of the Policy is annexed hereto as Exhibit "D".

23. The Policy provides for $1,000,000.00 for each claim and an aggregate limit of liability in the sum of $3,000,000.00.

24. Thereafter, Plaintiffs were named as co-defendants, along with DIRECTV, in the actions set forth below.

   a. On or about August 4, 2016, Doneyda Perez, after negotiating and paying to DIRECTV a Five Thousand ($5,000.00) Dollar settlement of the claim asserted against her, commenced a lawsuit in the United States District Court for the Central District of California, Southern Division, against, *inter alia*, Plaintiffs herein under Case no. 8:16-cv-01440 (the "Perez Action"). The Perez action alleges claims against DIRECTV specifically regarding the validity of the programming rights sold to Plaintiff. A copy of the Complaint filed in the Perez Action is annexed hereto as Exhibit "E".
   b. On or about November 23, 2016, Thu Hone Thi Nguyen a/k/a Thu-Thuy Nguyen individually and d/b/a US Nails commenced a third-party action (Plaintiffs herein were the attorneys representing the plaintiff in that action) in the United States District Court for the Northern District of Georgia, Atlanta Division, against, *inter alia*, Plaintiffs herein under Case no. 1:16-cv-01339-ELR (the "US Nails Action").[1] A copy of the Third-Party Complaint filed in the US Nails Action is annexed hereto as Exhibit "F".
   c. On or about July 10, 2013, Brandon Roberson, Julie Roberson and ELR Dreams, LLC commenced an action in the District Court of the 68th Judicial District of Dallas, Texas State Court, against, *inter alia*, Plaintiffs herein under Case no. DC-13-07637 (the "Roberson Action").[2] A copy of the Second Amended Petition filed in the Roberson Action is annexed hereto as Exhibit "G".
   d. On or about November 20, 2015, Angela Joaquin commenced an action in the United States District Court of New Jersey against, *inter alia*, Plaintiffs and others, including the installer, VERIZON, herein under Case no. 3:15-cv-08194 (the "Joaquin Action"). A copy of the Second Amended Complaint filed on or about October 31, 2016, in the Joaquin Action is annexed hereto as Exhibit "H".[3] The Perez Action, the US Nails Action, the Roberson Action and the Joaquin Action are hereinafter sometimes collectively referred to as the "Actions".

---

[1] The US Nails Action was dismissed on or about May 12, 2017.
[2] The Roberson Action was dismissed on or about August 17, 2015.
[3] The Joaquin Action was dismissed on or about January 20, 2021.

25. Plaintiffs timely provided written notice of the Actions to Defendants.

26. Evanston provided legal representation to Plaintiffs pursuant to the Policy by engaging the law firms of Lewis Brisbois (the Joaquin Action and the Perez Action), Campbell & Chadwick (the Roberson Action), and Hall Booth and Smith (the US Nails Action).

27. The Roberson Action, the US Nails Action and the Joaquin Action have each been either settled or dismissed without any finding of wrongdoing or any payment of settlement on behalf of Plaintiffs herein, and the only remaining action requiring defense pursuant to the Policy is the Perez Action.

28. By letter dated July 31, 2020, Defendant Evanston through its servicer notified Plaintiffs that the Policy limit of $1,000,000.00 was exceeded by the payment of legal fees and/or expenses and Evanston's obligations pursuant to the Policy expired (the "July 31, 2020, Letter"). A copy of the July 31, 2020, Letter is annexed hereto as Exhibit "I".

29. The July 31, 2020, Letter wrongly asserts that each of the Actions arise out of a series of related Wrongful Actions and wrongly concludes that the Actions should be treated as a single claim/occurrence as defined in the Policy.

30. At the time the July 31, 2020, Letter was issued, Lewis Brisbois was engaged as Plaintiff's counsel in active litigations in the Perez and Joaquin Actions.

31. The July 31, 2020, Letter provided Plaintiffs with merely 72 hours' notice of the purported withdrawal of coverage by Evanston and assigned counsel, Lewis Brisbois.

32. Plaintiffs have suffered extensive damages as a result of the sudden and wrongful withdrawal of coverage by Evanston.

33. Contrary to Defendant Evanston's conclusion, each of the Actions do not arise out of a series of related Wrongful Actions or similar acts by LLO.

34. LLO was authorized by DIRECTV to institute collection measures and legal actions against, inter alia, the named plaintiffs in the Actions who were each identified as exhibiting DIRECTV programming within their respective commercial establishment without having authorization from DIRECTV.

35. As a result, upon proper investigation, LLO first contacted the named plaintiffs with a claim letter, setting forth the misuse or violation engaged in by the named plaintiff (the "Claim Letters").

36. LLO did not engage in any wrongful conduct, and specifically did not engage in any fraud or extortion measures in sending the Claim Letters or negotiating consensual settlements.

37. The facts and circumstances giving rise to the allegations in the Actions were different in each of the Actions and moreover, with each of the customers contacted by LLO, included different auditors, witnesses, unique fact patterns and distinct settlement parameters and discussions.

38. LLO's conduct and the actions and it undertook in each of the cases was determined after an investigation by LLO, instructions from their client, DIRECTV, and guided by the facts obtained during the investigation.

39. For instance, upon receiving a file of potential misuse or violation, LLO needed to first determine if the misuse was one of commercial misuse or retail misuse and then apply the appropriate policy of DIRECTV in pursuing the claim for monetary damages or account conversion and entering into settlement negotiations based upon approved parameters and instructions by DIRECTV.

40. Upon determining the type of misuse LLO had to identify and apply the settlement guidelines set forth by DTV, which changed from time to time and based upon the exact

programming violation and type of misuse.

41. After identifying whether the violation was one of commercial misuse or retail misuse, LLO undertook significant due diligence steps required by DIRECTV to investigate and verify the following information on each specific file prior to bringing any enforcement steps:

- a. Identify and verify the pirated locations and forward to DIRECTV Risk Assurance Department to confirm locations are in fact pirates to pursue and for DIRECTV to provide information from their records as to the association of the pirating location to any other DIRECTV accounts, whether residential or a possible mirroring commercial account.
- b. Provide all file information to DIRECTV in order for DIRECTV to provide account information to determine possible pirating accounts that were utilized by the identified pirate.
- c. Once a pirating account is identified and matched with a business address, that file would be flagged for additional research to determine whether it was either a DIRECTV installer or retail installer that performed the installation and whether that installation was performed at a residential address.
- d. Prior to asserting a claim/ issuing a claim letter to an identified pirate location, for each specific matter, LLO's review the included but was not limited to the following:
    - i. Public Records:
        1. Owner residential address history
        2. Existence of Liquor License
        3. Secretary of State/Corporate documents
    - ii. Media and Site Inspection form;
    - iii. Installation records;
    - iv. OMS – Initiating order management system document from DIRECTV showing the installation information;
    - v. RIO- DIRECTV call records from internal system;
    - vi. Customer account records;
    - vii. Customer correspondence;
    - viii. Dealer information;
    - ix. Google maps;
- e. If the address is identified where the installation occurred is identified as a commercial location, based upon the underlying installation records and associated fact information, the file was sometimes thereafter treated as a "Conversion Exception" matter and an amnesty letter was sent to the customer.
- f. Claim Letters sent on non-Conversion Exception files
    - i. Settlement parameters and negotiations were guided by the type and level

     of misuse or violation;
  ii. Based on the type of location, different settlement tiers were applied;
  iii. Based on whether an establishment agreed to convert to become a new DIRECTV customer, different settlement tiers were applied

42. As set forth above, independent research was performed by LLO on each and every file referred to it by DIRECTV.

43. Upon the conclusion of its research and based upon the results determined by LLO, different courses of action were taken for each file.

44. LLO did not engage in the same behavior or undertake the same action in each of the files.

45. Additionally, the allegations of events contained in each of the Actions occurred during different time periods and included different sets of proofs, facts, auditors, installers, records and actions.

46. Enforcement policies of DIRECTV, which guided and determined LLO's parameters of enforcement efforts and settlement guidelines changed from time to time requiring LLO to update its policies and processes.

47. In all instances of LLO's representation of DIRECTV, upon DIRECTV's determination of potential customer misuse and upon DTV's purported review of its audits and internal investigations, DIRECTV directed LLO to pursue each of the plaintiffs in the respective Actions.

48. The parties in each of the Actions are not related in any manner.

49. There is no factual nexus between the claims asserted in each of the Actions.

50. A comparison of the claims asserted in each Action demonstrates that the basic elements of each of the Actions is separate and distinct and based upon different underlying factual allegations.

51. More importantly, the response and actions undertaken by LLO differed in each of the Actions.

52. Defendant Evanston is in default of its obligation under the Policy, by failing to provide continued coverage to the full limit of the Policy in the sum of $3,000,000.00.

53. Plaintiffs paid the premium due for the Policy based upon its understanding that the Policy provided separate insurance coverage for each of the Actions.

54. On or about November 16, 2020, Plaintiffs received an email from Lewis Brisbois (the "Lewis Brisbois Email"), notifying Plaintiffs that Defendants failed to pay Invoice Numbers 2560348, 2617365, 2625784, 2654264, 2687655, 2705784 and 2730873, previously submitted to Defendant for payment and payment were denied.

55. In the Lewis Brisbois Email, Lewis Brisbois further remitted to Plaintiffs Invoice Numbers 276585, 2793152, 2822311, 2839150, 2868443, 2868140. The final invoice submitted by Lewis Brisbois to Plaintiffs indicates a total amount due and outstanding in the sum of $166,593.85.

56. Upon information and belief, legal fees and costs are accruing and will continue to accrue on behalf of Plaintiffs in defense of the Perez Action.

## AS AND FOR A FIRST CAUSE OF ACTION
### (Declaratory Judgment Against Evanston)

57. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

58. The Policy provides for separate defense coverage for each of the Actions.

59. By reason of Defendants notification of cessation of coverage set forth in the July 21, 2020, Letter, a present and actual controversy exists as to Defendants' obligation to defend Plaintiffs in the Actions.

60. Based upon the foregoing, Plaintiffs are entitled to a judgment pursuant to CPLR §3001 declaring that Evanston is obligated under the Policy to defend and indemnify Plaintiffs from the claims asserted in the Actions to the full extent of the Policy in the sum of $3,000,000.00.

### AS AND FOR A SECOND CAUSE OF ACTION
### (Breach of Contract Against Evanston)

61. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

62. The Policy constitute a valid contract between Plaintiffs and Evanston.

63. The Policy provides for separate defense and indemnification coverage for each of the Actions.

64. Defendants breached the Policy by, *inter alia*, withdrawing defense coverage and refusing to continue to defend and indemnify Plaintiff in the Actions.

65. Plaintiffs have satisfied all of their obligations imposed upon them by the Policy, including making the payment of the insurance premiums.

66. As a result of Defendants breach of its obligations pursuant to the Policy, Plaintiffs have sustained damages in an amount to be determined at trial.

### AS AND FOR A THIRD CAUSE OF ACTION
### (Breach of Contract Against Evanston)

67. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

68. The Policy constitute a valid contract between Plaintiffs and Evanston.

69. The Policy provides for separate defense and indemnification coverage for each of the Actions.

70. Defendant Evanston breached the Policy by, *inter alia*, failing to pay the amounts

due and owing to Lewis Brisbois for work performed in the defense of the Plaintiff in the total sum of $166,593.85 and any other legal fees incurred and accruing in the continued defense of the Perez matter.

71. As a result of the foregoing, Plaintiffs demand an order requiring Defendant to pay the outstanding invoices to Lewis Brisbois in an amount to be determined, plus any additional attorneys' fees and costs that have been and will be incurred in Plaintiffs' defense of the Actions.

**AS AND FOR A FOURTH AND ALTERNATIVE CAUSE OF ACTION**
**(Specific Performance Against Evanston)**

72. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

73. The Policy provides for $1,000,000.00 for each claim and an aggregate limit of liability in the sum of $3,000,000.00.

74. Notwithstanding Plaintiffs full compliance with their obligations pursuant to the Policy, Defendant has failed to provide coverage in the full amount of $3,000,000.00 as set forth in the Policy.

75. Based upon the foregoing, Plaintiffs are entitled to an order of specific performance directing the Defendant to withdraw its disclaimer of continued coverage and provide Plaintiffs with a defense to the full extent of the Policy in the sum of $3,000,000.00.

**AS AND FOR A FIFTH CAUSE OF ACTION**
**(Declaratory Judgment Against DIRECTV)**

76. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

77. The Retainer Agreement provides for DIRECTV to indemnify, defend and hold Plaintiffs harmless from any and all costs, expenses, liability, claims, judgments, lawsuits and

demands related to the litigation of commercial misuse and fraud claims.

78. DIRECTV has failed to indemnify and defend Plaintiffs, despite due demand.

79. Based upon the foregoing, Plaintiffs are entitled to a judgment pursuant to CPLR §3001 declaring that DIRECTV is obligated under the Retainer Agreement defend and indemnify Plaintiffs from the claims asserted in the Actions, including all costs and attorneys' fees.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (Breach of Contract Against DIRECTV)

80. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

81. The Retainer Agreement constitutes a valid contract between Plaintiffs and DIRECTV.

82. The Retainer Agreement provides for DIRECTV to indemnify, defend and hold Plaintiff harmless from any and all costs, expenses, liability, claims, judgments, lawsuits and demands related to the litigation of commercial misuse and fraud claims.

83. Defendant DIRECTV is in breach of its obligations under the Retainer Agreement refusing to continue to indemnify, defend and hold harmless Plaintiff in the Actions.

84. Plaintiffs have satisfied all of their obligations imposed upon them by the Retainer Agreement.

85. As a result of Defendants breach of its obligations pursuant to the Retainer Agreement, Plaintiffs have sustained damages in an amount to be determined at trial.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (Specific Performance Against DIRECTV)

86. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

87. The Retainer Agreement provides for DIRECTV to indemnify, defend and hold Plaintiff harmless from any and all costs, expenses, liability, claims, judgments, lawsuits and demands related to the Actions.

88. Based upon the foregoing, Plaintiffs are entitled to an order of specific performance directing DIRECTV to indemnify, defend and hold Plaintiff harmless from any and all costs and expenses, related to the litigation of commercial misuse and fraud claims

### AS AND FOR A EIGTH CAUSE OF ACTION
### (Breach of Duty of Good Faith Against DIRECTV)

89. Plaintiffs repeat and reallege the allegations set forth in paragraphs "1" though "56" as if fully set forth herein.

90. As a result of the foregoing, DIRECTV has breached its duty to exercise good faith and fair dealing with Plaintiffs causing damages in an amount to be determined by the Court.

**WHEREFORE**, for the foregoing reasons, Plaintiffs demands judgment against Defendants as follows:

a.  On the First Cause of Action against Defendant Evanston for judgment pursuant to CPLR §3001 declaring that Evanston is obligated under the Policy to defend and indemnify Plaintiffs from the claims asserted in the Actions to the full extent of the Policy in the sum of $3,000,000.00;
b.  On the Second Cause of Action against Defendant Evanston for a judgment in an amount to be determined at trial;
c.  On the Third Cause of Action against Defendant Evanston for an order requiring Defendant Evanston to pay the outstanding invoices to Lewis Brisbois in a sum to be determined at trial;
d.  On the Fourth Cause of Action against Defendant Evanston for an order directing the Defendant Evanston to withdraw their disclaimer of continued coverage and provide Plaintiffs with a defense to the full extent of the Policy in the sum of $3,000,000.00;
e.  On the Fifth Cause of Action against DIRECTV for judgment pursuant to CPLR §3001 declaring that DIRECTV is obligated under the Retainer Agreement defend, indemnify and hold harmless Plaintiffs from the claims asserted in the Actions including costs and attorneys' fees;
f.  On the Sixth Cause of Action against DIRECTV for a judgment in an amount to be determined at trial;

 g. On the Seventh Cause of Action against DIRECTV for an order requiring Defendants to indemnify defend and hold harmless Plaintiff for all costs and expenses related to the Actions;

 h. On the Eighth Cause of Action against DIRECTV in an amount to be determined by the Court; and

 i. For such other and further relief as the Court deems just and proper.

**Dated: New York, New York**
   **March 3, 2022**

               **NESENOFF & MILTENBERG, LLP**
               *Attorneys for Plaintiffs*

           **By:** */s/ Andrew T. Miltenberg*
               Andrew T. Miltenberg, Esq.
               Amy Zamir, Esq. (of counsel)
               363 Seventh Avenue, 5th Floor
               New York, New York 10001
               Telephone: (212) 736-4500
               amiltenberg@nmllplaw.com
               azamir@nmllplaw.com